IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EUGENE C. ROWLES, as Administrator of the Estate of BETTY J. ROWLES, deceased, | Case No. 3:17-cv-22 |
| Plaintiff, | JUDGE KIM R. GIBSON |
| v. | |
| GGNSC ALTOONA HILLVIEW LP d/b/a GOLDEN LIVINGCENTER— HILLVIEW and GGNSC ALTOONA HILLVIEW GP LLC, | |
| Defendants. | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is Defendants' Motion to Dismiss and Strike Claims in the Amended Complaint. (ECF No. 27.) The Motion has been fully briefed (*see* ECF Nos. 28, 30, 31) and is ripe for disposition.

This case arises from allegations of nursing home malpractice by the late Betty J. Rowles ("Mrs. Rowles"), by and through Eugene C. Rowles as the administrator of Mrs. Rowles's Estate, against Defendants GGNSC Altoona Hillview LP d/b/a Golden LivingCenter-Hillview and GGNSC Altoona Hillview GP LLC. (*See generally* ECF No. 17.) Defendants now ask this Court to dismiss Mrs. Rowles's claims for punitive damages and to strike certain allegations from the Amended Complaint regarding general survey deficiencies. (*See* ECF Nos. 27, 28.)

For the reasons that follow, this Court will **GRANT IN PART** and **DENY IN PART** Defendants' Motion. Specifically, Plaintiff's request for punitive damages as to her wrongful death claim (Count III) is dismissed. Otherwise, Defendants' Motion is denied.

## II.    Jurisdiction and Venue

The Court preliminarily finds that it has subject matter jurisdiction pursuant to 28 U.S.C § 1332(a)(1) because, according to the allegations of the Amended Complaint, Mrs. Rowles "resided" in Pennsylvania, GGNSC Altoona Hillview LP is a limited partnership organized and existing under the laws of the State of Delaware, GGNSC Altoona Hillview GP LLC is a limited liability company organized and existing under the laws of the state of Delaware, and the amount in controversy exceed $75,000, exclusive of interest and costs. (*See* ECF No. 17 ¶¶ 1-5.)

However, the Court notes that the allegations of the Complaint leave considerable ambiguity as to whether complete diversity of citizenship exists between Plaintiff and Defendants for the purposes of establishing subject matter jurisdiction. In particular, because the citizenship of limited partnerships and limited liability companies is determined by the citizenship of *all* of those business entities' partners and/or members, mere allegations that Defendants were created under Delaware state law are insufficient to establish diversity jurisdiction. *See Zambelli Fireworks MFG. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (also providing that, where a limited partnership or limited liability company has another business entity as a member or partner, "the citizenship of the unincorporated association must be traced through however many layers of partners or members there may be."). As part of the Order accompanying this Memorandum Opinion, the Court requires the parties to submit sufficient proof for this Court to exercise its responsibility to ascertain whether it can properly exercise subject matter jurisdiction over the

2

instant matter. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Court has personal jurisdiction because Defendants have established sufficient minimum contacts with Pennsylvania and/or the claims asserted are related to or arise out of Defendants' contacts with Pennsylvania. (*See generally* ECF No. 17.) Assuming proper subject matter jurisdiction exists, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the alleged events or omissions giving rise to Mrs. Rowles's claims occurred in the Western District of Pennsylvania. (*Id.* at ¶ 6.)

## III. Relevant Procedural History

Plaintiff commenced this action on January 12, 2017 by filing a Complaint in the Court of Common Pleas of Blair County, Pennsylvania. (*See* ECF No. 1; ECF No. 27 ¶ 2.) Defendants removed this state action to this Court on February 14, 2017. (ECF No. 1.) After Mrs. Rowles passed away on March 27, 2017 and the parties entered joint stipulations regarding alternative dispute resolution (*see* ECF Nos. 14, 15, 18), Plaintiff filed her Amended Complaint on August 24, 2017. (ECF No. 17.) The Amended Complaint is organized into four counts—all raised against both Defendants: (1) a claim for negligence/vicarious liability, (2) a claim for corporate negligence, (3) a claim for wrongful death, and (4) a survival action. (ECF No. 17 ¶¶ 26-53.)

Defendants filed the instant Motion to Dismiss and Strike Claims in the Amended Complaint and accompanying brief in support thereof on September 13, 2017. (ECF Nos. 27, 28.) Plaintiff filed a response and a brief in support thereof on September 28, 2017. (ECF Nos. 30, 31.) Lastly, Defendants filed a reply brief on October 10, 2017. (ECF No. 34.)

3

## IV. Factual Allegations Set Forth in the Amended Complaint

The following facts, which the Court accepts as true for the purposes of deciding Defendants' Motion, are alleged in the Amended Complaint. (ECF No. 17.)

Mrs. Rowles was admitted to Golden Living Hillview—a nursing home holding itself out as a capable of providing skilled nursing, rehabilitative, and health care—on April 14, 2015, where she remained until December 16, 2015. (*Id.* ¶¶ 1-2.)[1] Upon admission, Mrs. Rowles was able to ambulate with the use of a wheeled walker and was identified as a fall risk; she did not have any cognitive defects, behavioral issues, infections, or skin injuries. (*Id.* ¶ 3.)

On or about September 4, 2015, Mrs. Rowles fell and was observed sitting on her buttocks in front of closet doors. (*Id.* ¶ 4.) Mrs. Rowles developed Clostridium Difficile Colitis ("C. Diff") and a small open area distal to the stoma on September 24, 2014; she was placed in isolation and administered antibiotics. (*Id.* ¶ 5.)

On October 8, 2015, Mrs. Rowles fell a second time and was found lying on the floor beside her bed. (*Id.* ¶ 6.) Medical records indicate that she either continued to suffer from C. Diff or developed a second, separate C. Diff infection on October 12, 2015 and, again, was placed in isolation and administered antibiotics. (*Id.* ¶ 7.) On or about October 14, 2015, Mrs. Rowles fell twice; once at the left side of her bed and once with her back against a wall and her walker in front of her. (*Id.* 8.) The following day, Mrs. Rowles was evaluated for two pressure ulcers on her buttocks and, that same day, fell into a closet door, injuring her head, right elbow, and right

---

[1] The Court notes that the Amended Complaint has multiple paragraphs with identical numbering. The numbering through Part IV of this Memorandum Opinion refers to the numbered paragraphs that begin on page 2 of the Amended Complaint.

4

knee. (*Id.* ¶¶ 9-10.) On October 21, 2015, Mrs. Rowels fell and was found lying on the floor on her left side; she sustained a laceration to her forehead, "which bled profusely." (*Id.* ¶ 11.)

On or about November 13, 2015, Mrs. Rowles either continued to suffer from C. Diff or she developed another separate C. Diff infection. (*Id.* ¶ 12.) She was, again, placed in isolation and administered antibiotics. (*Id.*) At this time, Mrs. Rowles had lost 14.5% of her weight within the past 30 days. (*Id.*) On November 17 and 18, 2015, Mrs. Rowles was observed as having an abrasion on the tip of her "right great toe," having bruises on the outside of her right knee, and having "raw" skin from loose bowel movements. (*Id.* ¶¶ 13-14.) For a fourth time, on November 24, 2015, Mrs. Rowles either continued to suffer from C. Diff or developed another separate C. Diff infection. (*Id.* ¶ 15.) As before, she was placed in isolation and administered antibiotics. (*Id.*) On November 24, 2015, she had also sustained a pressure ulcer on her left heal and, on November 27, 2015, was observed as having a skin tear to her right lower extremity. (*Id.* ¶¶ 15-16.)

On December 3, Mrs. Rowles was evaluated by a podiatrist for a large pressure ulcer on her left heel, and, on or about December 11, 2015, she continued to suffer from multiple pressure ulcers to her left heel and buttocks, which were causing fever and pain. (*Id.* ¶¶ 17-18.) On December 15, 2015, Mrs. Rowles either continued to suffer from C. Diff or developed another separate C. Diff infection and her pressure ulcers were worsening. (*Id.* ¶¶ 19-20.) Furthermore, also on December 15, 2015, Mrs. Rowles fell again and was observed lying on the floor near her window. (*Id.* ¶ 21.) Mrs. Rowles's hit her head, had vomited clear fluids, suffered a skin tear to her left elbow, and experienced an inward rotation of her left leg and foot. (*Id.*) X-rays showed a dislocation of Mrs. Rowles's left hip prosthesis, resulting in Mrs. Rowles being transported to the emergency department at UPMC-Altoona Hospital. (*Id.*)

5

On December 16, 2015, Mrs. Rowles was transferred from UPMC-Altoona Hospital to UPMC-Presbyterian Shadyside Hospital, where she was diagnosed with, *inter alia*: (1) left hip dislocation; (2) urinary tract infection; (3) bilateral heel pressure ulcers; (4) left heel deep wound infection; (5) recurrent severe C. Diff infection; and (6) sacral decubitus ulcers and dermatitis—extensive in groin and buttocks. (*Id.* ¶¶ 22-23.)

On December 18, 2015, Mrs. Rowles underwent an unsuccessful closed reduction procedure of her left hip. (*Id.* ¶ 24.) An open reduction procedure was not recommended due to Mrs. Rowles's condition and hospice was consulted. (*Id.*) On December 24, 2015, Mrs. Rowles was transferred from UPMC-Presbyterian Shadyside Hospital to Huntingdon Nursing and Rehab Center, where she resided until her death on March 27, 2017. (*Id.* ¶ 25.)

## V. Standard of Review

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But, detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[2] First, the court must "tak[e] note of the elements

---

[2] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

6

[the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## VI. Discussion

Defendants have moved to dismiss all of Plaintiff's claims for punitive damages and to strike certain allegations of the Amended Complaint regarding general survey deficiencies. (*See* ECF Nos. 27, 28.) The Court will address each of Defendants' arguments in turn.

### A. Plaintiff's Request for Punitive Damages for her Wrongful Death Claim (Count III) is Dismissed with Prejudice

In Count III of the Amended Complaint, Plaintiff asserts a claim for the wrongful death of Mrs. Rowles pursuant to Pennsylvania's Wrongful Death Act, 42 Pa. Stat. and Cons. Stat. Ann. §§ 8301-02. (ECF No. 17 ¶¶ 46-50.) Plaintiff requests punitive damages for Count III. (*Id.* at 12.) The Court must dismiss this request.

7

"It is well-settled that punitive damages are not recoverable in wrongful death actions under Pennsylvania law." *Clouser v. Golden Gate Nat'l Senior Care, LLC*, Civil Action No. 3:15-33, 2016 WL 1179214, at *10 (W.D. Pa. Mar. 23, 2016) (Gibson, J.) (quoting *Ortiz v. Porte Reve Transp., Inc.*, No. 1:15-CV-958, 2015 WL 4078873, at *6 (M.D. Pa. July 6, 2015)); *see also Brittain v. Hope Enterprises Foundation Incorporated*, 163 A.3d 1029, 1034 n.4 (Pa. Super. Ct. 2017); *Harvey v. Hassinger*, 461 A.2d 814 (Pa. Super. Ct. 1983); *Shropshire v. Shaneyfelt*, No. 12-CV-1657, 2013 U.S. Dist. LEXIS 62425, at *5-*6 (W.D. Pa. May 1, 2013) ("Pennsylvania law does not recognize the right to assert a claim for exemplary or punitive damages under the Wrongful Death Act, 42 Pa.C.S.A. § 8301 [.]"); *Burke v. Glanton*, No. 12-CV-851, 2012 U.S. Dist. LEXIS 172647, at *5 (W.D. Pa. Dec. 5, 2012) ("Pennsylvania does not permit punitive damages in wrongful death actions."). Plaintiff has not offered any citations to authority or other argument to contradict Pennsylvania's well-established prohibition on punitive damages for wrongful death actions. (*See* ECF Nos. 30, 31.)

Accordingly, the Court will dismiss Plaintiff's claim for punitive damages as to her wrongful death claim in Count III of the Amended Complaint. Because amendment would be futile, the Court denies leave to amend. *See Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003); *Campbell v. M&T Bank*, Case No. 3:16-cv-118, 2018 WL 401523, at *12-*13 (W.D. Pa. Jan. 12, 2018) (Gibson, J.)

### B. Plaintiff's Requests for Punitive Damages for the Remaining Counts Are Supported by Sufficient Allegations at this Early Stage

Defendants further argue that Plaintiff's request for punitive damages as to the remaining counts should also be dismissed because the Amended Complaint's allegations are legally insufficient to state a claim for punitive damages. (ECF No. 27 ¶¶ 15-26; ECF No. 28 at 5-9.)

8

Defendants have effectively argued their position and may be successful at a later stage of litigation, but the Court will not dismiss the remaining claims for punitive damages at this early pleading stage.

Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (2005) (citing *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)). "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Id.* (citing *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704 (Pa. 1991)).

"[W]hen assessing the propriety of the imposition of punitive damages, '[t]he state of mind of the actor is vital.'" *Hutchison*, 870 A.2d at 770 (quoting *Feld*, 485 A.2d at 748). "[A] punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Id.* at 770; *see also Scott v. Burke*, No. 2:13-CV-278, 2013 WL 4648402, at *3 (W.D. Pa. 2013) (same). Furthermore, under the Medical Care and Reduction of Error Act ("MCARE Act"), 40 Pa. Stat. and Cons. Stat. Ann. § 1303.505, punitive damages against healthcare providers, which includes skilled nursing facilities such as Defendants herein, cannot be awarded based on only gross negligence—willful or wanton conduct or reckless indifference to the rights of others is required. *Id.* § 1303.505(a)-(b). Additionally, holding a healthcare provider vicariously liable for the actions or omissions of its agents requires that the defendant "knew of and allowed" the conduct. *Id.* § 1303.505(c).

In the instant matter, the Amended Complaint satisfies this standard by alleging repeated falls and recurring medical issues without adequate protective measures or treatment. *See supra* Part IV. In the context of a motion to dismiss, the veracity of all of the allegations of the complaint is presumed and reasonable inferences are made in Plaintiff's favor. *Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786. Therefore, the Court finds that, with the exception of Count 3, the allegations of the Complaint are sufficient to make out a cognizable claim for punitive damages.

The Amended Complaint's allegations that Mrs. Rowles' repeatedly fell despite being identified as a fall risk, developed numerous medical issues that only worsened during her time at Defendants' facility, and suffered poor care due to safety and policy violations by Defendants' staff are sufficient under federal pleading standards to make out a preliminary showing of reckless indifference to Mrs. Rowles's rights. *See Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786. While it is a close call, the Amended Complaint features sufficient factual content to make out a facially plausible claim for punitive damages for Plaintiff's claims other than Count 3. *See Lopez v. CSX Transp., Inc.*, Civil Action No. 3:14-CV-257, 2017 WL 6209917, at *3 (W.D. Pa. Dec. 7, 2017) (Gibson, J.).

### C. Defendants' Motion to Strike is Denied

Finally, Defendants asks this Court to strike allegations in paragraph 37 and paragraph 38 of the Amended Complaint regarding "systemic deficiencies" at Defendants' facilities pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 27 at 6-8; ECF No. 28 at 9-10.) Defendants argue that these allegations should be stricken because they are "vague, generalized, and not supported by any facts." (ECF No. 28 at 9.) The Court is not persuaded by Defendants' arguments and denies Defendants' motion to strike.

Under Federal Rule of Civil Procedure 12(f), courts may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Berezansky v. CBN Bank*, Case No. 3:17-cv-105, 2018 WL 461245, at *2 (W.D. Pa. Jan. 17, 2018) (Gibson, J.) (citing *Nelson v. Bender*, No. 3:15-64, 2015 WL 8207490, at *4 (W.D. Pa. Dec. 7, 2015)). The purpose of a motion to strike "is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Hay v. Somerset Area Sch. Dist.*, No. 3:16-CV-229, 2017 WL 2829700, at *3 (W.D. Pa. June 29, 2017) (Gibson, J.) (quoting *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 443 (W.D. Pa. 2010)); *see also Brugh v. Mount Aloysius College*, Case No. 3:17-cv-71, 2017 WL 5634984, at *9 (W.D. Pa. Nov. 21, 2017) (Gibson, J.).

Motions to strike "'are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Hay*, 2017 WL 2829700, at *3 (quoting *Tennis*, 730 F. Supp. 2d at 443) (internal citations omitted); *see Bender*, 2015 WL 8207490, at *9 ("The standard for striking under Rule 12(f) is strict and only allegations that are so unrelated to plaintiff's claims as to be unworthy of any consideration should be stricken. Striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice.") (quoting *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004)) (internal quotations and citations omitted).

In their entirety, the pertinent paragraphs of the Amended Complaint state:

37. Defendants had notice of its systemic deficiencies prior to Mrs. Rowles residency by way of the annual survey and certification process.

38. Prior to Mrs. Rowles residency, defendants received statements of deficiencies demonstrating violations of the regulations governing the provision of its healthcare services, yet defendants continued to violate the regulations in its delivery of healthcare services to Mrs. Rowles.

11

(ECF No. 17 ¶¶ 37-38.)

While these paragraphs may not feature the particularity that Defendants desire, the Federal Rules of Civil Procedure do not require detailed pleadings, *see Connelly*, 809 F.3d at 786, nor do the Federal Rules permit paragraphs 37 and 38 to be stricken. These allegations are not "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12. To the contrary, if true, these allegations directly relate to the deficiencies in Defendants' facility that could have contributed to the harm allegedly caused by Defendants, to Defendants knowledge of their allegedly substandard care of Mrs. Rowles, and to Defendants' state of mind.

Defendants may certainly challenge whether Plaintiff can produce evidence to support these allegations and the weight and credibility of this alleged "annual survey and certification process" at the summary judgment and trial stage. However, as stated *supra*, motions to strike "'are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Hay*, 2017 WL 2829700, at *3 (quoting *Tennis*, 730 F. Supp. 2d at 443). Here, Defendants suffer no unfair prejudice from the allegations contained in paragraphs 37 and 38, the allegations relate to the Plaintiff's claims, and the allegations do not confuse the issues. *See Hay*, 2017 WL 2829700, at *3 (quoting *Tennis*, 730 F. Supp. 2d at 443). Thus, the Court will not strike paragraph 37 or paragraph 38 from the Amended Complaint.

## VII. Conclusion

Defendants' Motion to Dismiss and Strike Claims in the Amended Complaint (ECF No. 27) is granted in part and denied in part. In sum, Plaintiff's request for punitive damages as to

the wrongful death claim in Count III of the Amended Complaint is dismissed with prejudice because Pennsylvania law does not allow punitive damages for wrongful death claims. However, the presumptively true factual allegations of the Amended Complaint plausibly give rise to entitlement to punitive damages as to the remaining counts, and the Court discerns no valid basis to strike the allegations contained within paragraph 37 or paragraph 38 from the Amended Complaint.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE C. ROWLES, as Administrator of the Estate of BETTY J. ROWLES, deceased, | ) ) ) | Case No. 3:17-cv-22 |
| Plaintiff, | ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) ) | |
| GGNSC ALTOONA HILLVIEW LP d/b/a GOLDEN LIVINGCENTER— HILLVIEW and GGNSC ALTOONA HILLVIEW GP LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

NOW, this 24th day of January 2018, upon consideration of the Defendants' Motion to Dismiss and Strike Claims in the Amended Complaint (ECF No. 27), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Defendants' Motion (ECF No. 27) is **GRANTED IN PART** and **DENIED IN PART**.

Defendants' Motion is **GRANTED** to the extent that Plaintiff's request for punitive damages as to Count III of the Amended Complaint is **DISMISSED WITH PREJUDICE**. Defendants' Motion is **DENIED** in all other regards.

In accordance with Part II of the accompanying Memorandum Opinion, the parties are **FURTHER ORDERED** to submit sufficient proof of the complete diversity of citizenship between Plaintiff and Defendants to this Court **on or before February 2, 2017**.

BY THE COURT

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE